**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | | |
|---|---|---|
| **UNDER ARMOUR, INC.,** | * | **Case No. 1:19-cv-02417-ELH** |
| **Plaintiff,** | * | |
| **v.** | * | |
| **ARMORINA INC.,** | | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT ON COUNT 6 (CYBERSQUATTING)**

Defendant Armorina Inc. ("Armorina") respectfully submits this Response in Opposition to Plaintiff's Motion for Summary Judgment AND Cross-Motion for Partial Summary Judgment on Plaintiff's Count 6 (Cybersquatting).

**I.      INTRODUCTION**

In 2018, Ms. Juliet Huang ("Ms. Huang") started her company Armorina as a way to empower and inspire modern women.  Using her background in fashion design, she created a line of "athleisure" clothes (primarily leggings and bras) that her customers could feel good wearing both in the gym and in their everyday lives.  Ms. Huang, inspired by seeing suits of armor at the Metropolitan Museum of Art while in school, creatively combined the words "armor" and "ballerina" to form the unique name for her nascent company- Armorina.

Ms. Huang did her due diligence.  She checked to see if armorina.com was available as a domain name, and purchased it.  She hired an attorney specializing in trademarks to advise her regarding registering her trademark with the United States Patent and Trademark Office ("USPTO").  The attorney performed research and informed Ms. Huang that she would very likely

be able to successfully register the Armorina mark.  She hired a company to design a logo for Armorina, ultimately choosing a triangle-shaped logo atop the stylized text ARMORINA:



Despite her best efforts at marketing her products and her brand, sales remained slow (Armorina has sold approximately $3,500 worth of products over its lifetime).  But slow sales were an expected hurdle for any new retail business.  What Ms. Huang could not have anticipated was an attack by Under Armour, a Maryland-based sports apparel company with revenues of around $3.5 billion a year.  When Under Armour got wind of Armorina's trademark application, it charged in like an armor-clad knight onto the battlefield- first opposing her application and then filing this trademark infringement (et cetera) lawsuit against Armorina

When faced with a fearsome cavalry charge of this sort, most small companies immediately waive the white flag of surrender- even when Under Armour's claims to the territory are legally dubious.[1]  Ms. Huang has stood her ground.  And for good reason: her trademarks pose no risk of confusing consumers.  Armorina's angular triangle logo bears no resemblance to Under Armour's curved oval "UA" logo.  The name "Armorina" looks, sounds, and has a different meaning than either "Under Armour" or "Armour" by itself.  Under Armour admits that there has been no actual confusion among the consuming public, or anyone else.  And crucially, Ms. Huang never intended

---

[1] See, e.g. https://www.washingtonpost.com/news/business/wp/2015/08/19/under-armour-is-suing-pretty-much-every-company-using-the-name-armor/; https://www.techdirt.com/articles/20181211/12315141201/under-armour-cant-help-issue-cease-desist-tiny-clothier-cascade-armory.shtml

to intrude on Under Armour's turf- she chose the name of her company with scant knowledge even of Under Armour's existence, much less its trademarks.

Armorina has not infringed on Under Armour's trademarks, and a reasonable jury should be permitted to find accordingly.  Far from compelling summary judgment for Under Armour, the facts show that there is no likelihood of confusion from the use of Armorina's marks.  On the other hand, Under Armour has not and can not produce evidence of bad faith required under the Anti-Cybersquatting Consumer Protection Act.  Thus, Armorina is entitled to summary judgment on Under Armour's Sixth Claim for Relief- Cybersquatting.

II.     FACTS

A.     The Inspiration Behind Armorina

Ms. Huang started Armorina in 2018 because she "want[ed] to make women feel good in the gym or out of [the] gym.  Ms. Huang was "inspired by modern women because women nowadays are so strong and passionate about life, work and everything and I want to make something beautiful for them."  Deposition of Juliet Huang, December 18, 2020 ("Huang Dep.") at 41:20-43:19.  Armorina makes athleisure clothes, which are "workout clothes that you can wear, not just in the gym, but also everyday life."  *Id*.  Armorina also offers "[l]eggings, shorts, bra, T-shirts, jacket, top, hair bands, resistance bands, cardholder for cell phones."  Huang Dep. at 89:11-13.  Ms. Huang is the sole owner and founder of Armorina, which has no employees.  Huang Dep. at 85:13-87:3.  Before starting Armorina, Ms. Huang did no "research into the marketplace of athleisure and who makes athleisure wear."  Huang Dep. at 46:16-20, 105:1-5.

B.     Ms. Huang Was Only Vaguely Aware of Under Armour

Ms. Huang never visited Under Armour's website before being sued by them, and has never bought or owned anything from Under Armour.  Thus, until she was sued by Under Armour,

3

there was "no reason for [her] to go to their website."  Huang Dep. at 66:8-67:6.  Before creating Armorina, Ms. Huang was vaguely aware of the existence of Under Armour, but knew nothing of the brand or its products.  She has seen "kids" wear black backpacks with a "really big Under Armour logo on it."  Huang Dep. at 78:9-14, 80:13-20.  Prior to being sued, Ms. Huang had never noticed people in New York wearing Under Armour clothes, nor had she seen their products in stores.  Huang Dep. at 80:21-81:3, 85:2-12, 98:18-100:4, 170:17-172:1.

Ms. Huang explained her knowledge of Under Armour further: "I can't recall when is the first time I became aware of Under Armour. If you put Under Armour in front of me, I can recognize it; if you don't, like there's no place that shows me about Under Armour because there's nobody like wear Under Armour around me and like I don't see stores in New York -- like Under Armour stores in New York.  It's not like -- it's not like Adidas or Nike, they have like huge retail stores on Fifth Avenue like where people shop. So if you really want to ask like how I know Under Armour, there's only like one picture in my mind, is that I do see like kids wear like a black -- a black backpack, has like really big Under Armour logo on it. That's the only picture in my mind." Huang Dep. at 77:22-78:14.

Q. Okay. And did you learn of Under Armour -- did you know of Under Armour before this lawsuit?

A. As I said, if you show me Under Armour, then I know the logo then or it's Under Armour, but I don't really know what really Under Armour is.  But I know that Under Armour is existing.  Huang Dep. at 80:15-21.

### C.      The Choice of the Name Armorina

Ms. Huang came up with the name "Armorina" herself.  Huang Dep. at 154:5-16.  Ms. Huang chose Armorina as the name of her company by combining the words "armor" and the

letters "-rina" from "ballerina."   Huang Dep. at 47:8-10, 111:22-113:1, 122:15-18.   "Well, Armorina was inspired by -- of the armor in the Metropolitan Museum, when studying in Parsons, we have to get inspired all the time so we go to museums.   And armor was really like kind of very inspiring for me so it stuck in my mind.   So we used armor and combined with the ballerina, rina, and created Armorina."  Huang Dep. at 106:4-21, 107:15-21.

 "Armor" was meant to invoke strength and fearlessness, while "ballerina" was meant to give a feminine aspect to the brand.  Huang Dep. at 118:15-18, 112:22-113:1.  Ms. Huang didn't consider any names for her company other than "Armorina" because it "is the perfect name." Huang Dep. at 119:8-18.   Armorina has an explanation of its brand name on its website so customers know what the company stands for.  Huang Dep. at 125:17-128:19.  Exhibit 5 to Huang Dep., screenshot of armorina.com "About Us" page.  The décor in her small jewelry shop she runs with her brother "He" (which is the name of the shop and her brother) is also inspired by armor. Huang Dep. at 107:15-110:6.

### D.    The Design of the Armorina Logo

A company called Logo Scientist, which Ms. Huang found online, designed Armorina's entire logo, including the stylized triangle design with "Armorina" text below it.  Deposition of Juliet Huang, continued March 12, 2021 ("Huang Dep. Cont.") at 41:18-50:6.  Ms. Huang told Logo Scientist she wanted a logo design similar to Kate Spade's, in that it has a "logo with a name underneath it."   Huang Dep. Cont. at 52:9-21, 53:4-57:18.   Ms. Huang also filled out a questionnaire for Logo Scientist to use in designing her logo and website.  Huang Dep. Cont. at 58:6-68:20; Exhibits 47, 48 to Huang Dep., Logo Scientist Questionnaire for Content Writing.

Ms. Huang explains that she connected with the triangle design because it is reminiscent of the letter "A" (as in the first and last letters of "Armorina.")  It also looks like "a person is

meditating, sitting down and meditating."  Huang Dep. at 129:6-133:15; Huang Dep. Cont. at 103:6-11, 175:16-19.  Ms. Huang rejected the other options produced by Logo Scientist because she didn't like them.  Huang Dep. Cont. at 76:4-95:19.  After she narrowed the choices down to two options, including one similar to the final Armorina logo, she asked Logo Scientist to revise them.  Exhibits 50, 62 to Huang Dep., Potential Armorina Logos; Huang Dep. Cont. at 100:6-103:11, 170:16-172:6.

Ms. Huang doesn't know how Logo Scientist chose the font in the Armorina logo, and doesn't know why they chose black and red for the colors of the logo.  Huang Dep. Cont. at 115:2-9.  Ms. Huang never instructed Logo Scientist to look at Under Armour logo, and never discussed Under Armour at all with them.  Huang Dep. Cont. at 176:3-12, 220:20-221:1

### E.      Ms. Huang Hired a Trademark Attorney

Ms. Huang hired a New York-based trademark clearance attorney, Jeremy Peter Green ("Mr. Green"), to give a legal opinion about the registerability of the trademark "Armorina" and to register the mark.  Huang Dep. at 154:11-16, 159:16-160:5.  Mr. Green performed a search of the USPTO website and an online common law trademark search.  Deposition of Jeremy Peter Green, February 10, 2021 ("Green Dep.") at 181:12-183:11, 196:17-199:22.  After analyzing the results of his searches, he told Ms. Huang that there was an 80% chance that the "Armorina" name could be successfully registered as a trademark.  Huang Dep. at 162:7-16; Green Dep. at 179:8-181:11; Exhibit 8 to Huang Dep., Green Email to Huang, May 24, 2018.  The remaining 20% chance of rejection by the USPTO was based solely on his discovery of "Armorina" being a surname of "some people."  Mr. Green added that "[t]his rejection probably won't happen though." *Id*.

Mr. Green did not mention any of Under Armour's trademarks in his legal opinion email advising her that she could likely successfully register the "Armorina" mark.  Huang Dep. at 162:7-168:4; Exhibit 8 to Huang Dep., Green Email to Huang, May 24, 2018.  Mr. Green testified that he was aware of the existence of Under Armour, but did not consider their trademarks to be relevant or an impediment to the registration of "Armorina" because in his opinion there would be no likelihood of confusion.  Among his reasons for this conclusion were that "armor" or "armour" are merely descriptive of Under Armour products and that "Under Armour" and "Armour" are sufficiently dissimilar marks from "Armorina."   Green Dep. at 182:22-209:21, 221:19-248:13, 269:6-271:6.

**F.      Armorina Marketing**

Armorina markets its products primarily through its own website (armorina.com), social media accounts, affiliates via online platforms such as Shareasale.com, and unpaid brand ambassadors who receive free products in exchange for posting to social media.  Armorina also briefly offered one product on Amazon, has participated in two fashion trade shows targeted at boutique apparel shops, and contracted with a sales agent (Julien Carlus)- also in an attempt to reach boutique resellers.  Huang Dep. at 185:10-186:22, 191:10-193:1, 207:7-8, 239:7-240:21, 248:5-20, 267:18-269:2

**G.      Under Armour 30(b)(6) Deposition**

According to Under Armour's corporate designee, their use of the word Armour was originally "meant, it was -- it was made to convey the idea of going into battle and the original story was really around, you know, the knight. If you look at some of the original imagery, it was about the shield, so it's meant to evoke that idea of the athlete going into battle.  It's definitely not meant to insinuate it's visible armor by any means."  Deposition of Teresa Oles, April 6, 2021

("Oles Dep.") at 138:7-139:12.   Alternatively, Under Armour's marks "should be conveying premium innovation and quality like we talked about before in the mind of the consumer. Again, it's meant to convey through all the brand work that we've done against Under Armour as a whole and armour, it really is meant to convey again this empowerment and that feeling of, like, I can do anything through, through what we're offering and associating, you know, again that quality and that, the premium nature of the clothing itself." *Id*. at 140:18-145:17.

Under Armour's corporate designee sees confusing similarities between Armorina's triangle logo standing alone (without text) and Under Armour's oval UA logo standing alone (without text), including that Armorina's triangle logo might somehow contain the letter U. *Id*. at 218:6-223:7.



According to the corporate designee, Under Armour has used "hundreds of different fonts, whether it be within our names, advertising, but also a lot on our products, so apparel, footwear, et cetera. We haven't been afraid of fonts for sure." *Id*. at 223:17-227:22.

Under Armour admits that it is unaware of any instances of actual confusion between Armorina and Under Armour, either as to the relationship between the companies or as to the source, sponsorship, or affiliation of Armorina's products. *Id*. at 230:8-231:22.   Similarly, Under Armour's corporate designee admits that it does not have any facts to support its claim that Armorina knew about Under Armour's trademarks. *Id*. at 239:18-240:15.

### III.     ARGUMENT- OPPOSING SUMMARY JUDGMENT

### A.     Summary Judgment Generally

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court construes the evidence in the light most favorable to the party opposing the summary judgment motion, and draw all reasonable inferences in its favor. *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 283 (4th Cir.2004) (*en banc*); *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 392 (4th Cir. 2009)

### B.     Under Armour has the Burden of Proof on Likelihood of Confusion

The burden falls upon Under Armour, the putative senior mark holder, to establish likelihood of confusion.  For the burden to shift to Armorina, Under Armor must show not only that Armorina copied its mark, but also must show such copying to be intentional. *Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 239 (4th Cir. 1997); *See Larsen v. Terk Technologies Corp.,* 151 F.3d 140, 149 (4th Cir. 1998); *Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*, 213 F. Supp. 2d 612, 623, fn. 22 (E.D. Va. 2002)("Because the evidence of intentional copying is not compelling, the analysis here proceeds with [the senior mark holder] as the party bearing the burden of proving likelihood of confusion.").  Here, Under Armour does not present any proof that Armorina copied its mark, much less that the copying was intentional.

### C.     Likelihood of Confusion is a Factual Issue Ordinarily Best Left for Trial

"[T]ypically, trademark infringement claims, especially the issue of likelihood of confusion, are 'particularly amenable to resolution by a jury.'" *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 375 (4th Cir. 2021)(quoting *Anheuser-Busch, Inc. v. L. & L. Wings, Inc*.,

962 F.2d 316, 318 (4th Cir. 1992); See also *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 666 (4th Cir. 2018)(explaining that "the likelihood of consumer confusion is an inherently factual issue.").  Even in a case where every other factor indicates a likelihood of confusion, a single remaining factor with a material factual dispute can preclude summary judgment.  *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 128 (4th Cir. 1990)("[W]e hold that in a market with extremely sophisticated buyers, the likelihood of consumer confusion cannot be presumed on the basis of the similarity in trade name alone, particularly without the benefit of trial.").

>  **D.**   **The Likelihood of Confusion Factors**

A party alleging trademark infringement must establish that the defendant's unauthorized use of a mark is "likely to confuse an 'ordinary consumer' as to the source or sponsorship of the goods." *Anheuser-Busch, Inc.*, 962 F.2d at 318; *see also CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006)("Likelihood of confusion exists if the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." (citation omitted)). In the Fourth Circuit, courts generally consider nine factors in determining whether there is likelihood of confusion:

(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;

(2) the similarity of the two marks to consumers;

(3) the similarity of the goods or services that the marks identify;

(4) the similarity of the facilities used by the markholders;

(5) the similarity of the advertising used by the markholders;

(6) the defendant's intent;

(7) actual confusion;

(8) the quality of the defendant's product; and

(9) the sophistication of the consuming public.

*RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361 (4th Cir. 2021)(citation omitted). These factors are not always weighted equally, and consideration of all the factors is not mandatory. *Rosetta Stone Ltd. v. Google, Inc*., 676 F.3d 144, 154 (4th Cir. 2012)(citing *Pizzeria Uno Corp. v. Temple* , 747 F.2d 1522, 1527 (4th Cir. 1984)).

### 1.    Actual Confusion

Actual confusion is the most important factor in determining "likelihood of confusion" in trademark infringement claims. *CareFirst of Md., Inc*., 434 F.3d at 268 (explaining that evidence of actual confusion is "often paramount" in determining the likelihood of confusion (quoting *Lyons P'ship*, *v. Morris Costumes, Inc*., 243 F.3d 789, 804 (4th Cir. 2001)). Actual confusion can be shown through either anecdotal or survey evidence. *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.,* 87 F.3d 654, 661 (4th Cir. 1996).

Under Armour correctly argues that a lack of *anecdotal* evidence is unsurprising, given the limited opportunity afforded Armorina to engage in business.[2]  See ECF 43 at 34-35.  However, as Under Armour acknowledges, "Armorina voluntarily put its sales on ice shortly after this lawsuit, only recently resuming its advertising efforts in around November 2020." *Id*. at 35.  At the least, Under Armour should not be rewarded for engaging in a campaign of pre-emptive litigation to eliminate potential competition.  After all, if the Armorina and Under Armour marks had coexisted for a substantial amount of time without evidence of actual consumer confusion (as would have been the likely result, given the dissimilarity in their marks), a strong inference would arise that there is also no likelihood of confusion. *CareFirst of Maryland, Inc*., 434 F.3d at 269

---

[2] Ms. Huang is also not aware of anyone ever confusing Under Armour products with Armorina's.  Huang Dep. at 293:22-295:7.

(4th Cir. 2006)("Although proof of actual confusion is not necessary to show a likelihood of confusion, the absence of any evidence of actual confusion over a substantial period of time— here, approximately nine years—creates a strong inference that there is no likelihood of confusion. This important factor thus weighs heavily against CareFirst.")(citation omitted).

Additionally, Under Armour cannot argue that it had no opportunity to develop *survey* evidence to support a finding of actual confusion.  Given the confidence with which Under Armour asserts a likelihood of confusion with Armorina's marks, their likely considerable litigation war chest, and the "often paramount" nature of actual confusion evidence, it is surprising that no survey was performed in this case.  In any event, without evidence of actual confusion, at the very least this factor is neutral.  See *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 320 (4th Cir. 2017)("[W]e cannot infer actual confusion when [mark holder] has presented no evidence to support such an inference.")  A jury would be in the best position to determine any confusion.

### 2.      Similarity of Marks

In the circumstances of this case, the lack of similarity of the marks is the factor that should probably be given the most weight in determining any likelihood of confusion.  As it is used in commerce, the ARMORINA mark doesn't look like, sound like, or have the same meaning as UNDER ARMOUR (or ARMOUR).  The appearance of the mark in commerce is the relevant inquiry under Fourth Circuit precedent.  *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 160 (4th Cir. 2014), quoting *Anheuser–Busch, Inc.,* 962 F.2d at 319 (holding that to determine if the use of a mark creates a likelihood of confusion with a protected trademark "we must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer.").

Under Armour argues repeatedly that the "dominant portion" or "dominant component" of both parties' marks is ARMOUR/ARMOR, and only those portions should be compared for

similarity.  ECF 43 at 17 ("with ARMOUR/ARMOR the dominant component of both parties'

marks, they are similar in sight, sound, meaning, and commercial impression"); *Id*. at 25 ("The

dominant ARMOUR and ARMOR elements of the parties' marks are virtually identical.").  This

is simply an incorrect interpretation of Fourth Circuit precedent, which has adopted the "anti-

dissection" doctrine.   See, e.g., *Combe Inc. v. Dr. Aug. Wolff GmBH & Co. KG Arzneimittel*, 382

F. Supp. 3d 429, 457 (E.D. Va. 2019), aff'd, No. 19-1674, 2021 WL 1384750 (4th Cir. Apr. 13,

2021)("[T]he "anti-dissection" rule requires consideration of the marks as a whole, rather than the

component parts of the marks.")(quotation omitted).

    Thus, Under Armour's focus on (and suggestion that the court should compare) ARMOUR

vs. ARMOR is misplaced.  ARMORINA is the mark that should be compared in terms of sight,

sound, and meaning.  Not only that, but ARMORINA should be compared in the form it typically

takes in commerce- accompanied by its distinctive triangle logo.

    The *Swatch* case is instructive to quote at some length, as it is directly applicable to this

case.

> Swatch argues that the district court erred because it should have focused
> on "SWA-" as the dominant portion of both marks. We compare whole words,
> not parts, *see Sara Lee Corp. v. Kayser–Roth Corp.,* 81 F.3d 455, 465 (4th
> Cir.1996), and generally use the phrase "dominant portion" to refer to the non-
> generic words in multiword marks, *see Lone Star Steakhouse & Saloon, Inc. v.
> Alpha of Virginia, Inc.,* 43 F.3d 922, 936 (4th Cir.1995) (identifying "Lone Star"
> as the dominant portion of the "Lone Star Steakhouse & Saloon" and "Lone Star
> Grill" marks). Therefore the district court correctly considered the similarities
> between SWAP and SWATCH as whole words and did not err in finding that the
> stylized marks are dissimilar.[12]
> Moreover, the district court explicitly determined de novo that the marks
> were dissimilar as they generally appear in commerce. *Swatch,* 888 F. Supp 2d at
> 751. The appearance of the mark in commerce is the relevant inquiry under our
> precedent. *Anheuser–Busch, Inc. v. L & L Wings, Inc.,* 962 F.2d 316, 319 (4th
> Cir.1992) (holding that to determine if the use of a mark creates a likelihood of
> confusion with a protected trademark "we must examine the allegedly infringing
> use in the context in which it is seen by the ordinary consumer.")

The district court correctly noted that accompaniments to marks and the manner in which they are presented in connection with goods can significantly reduce the likelihood of confusion between similar marks. *See CareFirst,* 434 F.3d at 271–72. It found that SWATCH almost exclusively appears accompanied by a Swiss flag both on products and in advertisements, while SWAP is generally accompanied by the phrase "by Beehive." It also found that there was a substantial difference in the fonts used by the two marks. Swatch's argument that courts may only consider elements accompanying a mark when that mark is weak, while SWATCH was found to be strong, misstates our precedent. We have held only that disparate design elements are "most significant" when the mark claiming infringement is weak. *Id.* at 271. Its other argument, that the district court failed to consider the similar placement of SWATCH and SWAP on watch faces, is frivolous. There are a limited number of places that a mark can reasonably appear on a watch face, and, more importantly, most of Swatch's watch faces include the word "Swiss" while SWAP appears alone. The district court's finding of dissimilarity in commerce was therefore not erroneous.

*Swatch AG v. Beehive Wholesale, LLC,* 739 F.3d 150, 159–60 (4th Cir. 2014).

Having established that ARMORINA (in combination with its triangle logo) is the relevant comparator mark, it becomes more obvious that the Under Armour marks are dissimilar.  Said aloud, "Armorina" has two more noticeable syllables than "Armour."  Certainly, no consumer would hear "Armorina" spoken aloud and confuse it with "Under Armour."  By sight, ARMORINA (even without its logo) omits the British "U" and adds the "-ina" component from the word "ballerina."  With the logos (or considering the logos alone), it is not even close.  Under Armor's "UA" logo is oval and has a curvy stylized interlocking "U" and "A."  Armorina's triangle logo is all angular lines, with no curves (or "U") to be found.  As for the meaning of the words in the parties' marks, reasonable minds might differ- but it is not a factor that weighs in favor of summary judgment.

As for the UNDER ARMOUR mark, which along with the "UA" logo is indisputably the most well-known of the Under Armour marks, it is not clear that ARMOUR is the "dominant" word over UNDER.  Further, it is likely that neither is the dominant word in the minds of consumers- rather the entire phrase is well-known.  *See Grayson O Co.*, 856 F.3d at 317 ("While

14

in some cases a court can easily identify a mark's dominant portion, a court need not engage in a technical dissection of a mark in order to deem one part dominant.  Such a requirement would defeat the purpose of determining whether the allegedly infringing use would confuse consumers, who typically do not engage in nuanced, piecemeal comparisons of marks."); *See also Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1155–56 (10th Cir. 2013)(holding that "SinuSense" and "Sinu*Cleanse"* were not similar when compared as a whole); *Alltel Corp. v. Actel Integrated Commc'ns, Inc.*, 42 F. Supp. 2d 1265, 1271 (S.D. Ala. 1999) (holding that ACTEL and ALLTEL were dissimilar as a whole based on the clearly different meanings invoked by the terms); *Sabinsa Corp. v. Creative Compounds, LLC,* 609 F.3d 175, 181 (3d Cir.2010)(district court erred by not comparing marks as a whole rather than piecemeal).

### 3.    Armorina's Intent

Under Armour has no direct evidence that Armorina or Ms. Huang acted with anything other than good faith by using the ARMORINA mark (and accompanying triangle logo).  Instead, Under Armour asks the Court to "infer" from circumstantial evidence that Armorina copied Under Armour's trademarks with bad faith intent.  ECF 43 at 32-33.  Under Armour's circumstantial argument relies largely on its self-regard as "iconic," "prominent," and "famous."  *Id*.  Essentially, the argument goes that since we are so famous, anyone who claims to not really know who we are (and that we have an ARMOUR mark specifically) must be lying.  But Under Armor has to ignore several pertinent facts to make this argument.

First, Ms. Huang hired a trademark attorney to clear and register her ARMORINA mark with the USPTO.  He gave her his reasoned legal opinion that she would be 80% likely to successfully register ARMORINA.  Ironically, it was undertaking this good faith due diligence that drew Under Armour's attention to her one-woman shop.  Second, she hired a logo designer

from the internet to design a logo for Armorina.  Any passing similarity of the font used by Armorina's logo designer to that of just one of the "hundreds" of fonts used by Under Armour in its advertising and on its products is purely coincidental- and Under Armor has presented no facts to dispute that.  Third, ARMORINA is not a similar mark to UNDER ARMOUR, much less copied directly from it.  Put simply, the court should not infer bad faith.  To the contrary- the evidence of Armorina's intent to do everything by the book should militate in its favor in the likelihood of confusion analysis.

### 4.    Similarity of Marketing Channels

There is undoubtedly some overlap between the marketing channels of Under Armor and Armorina.  However, this overlap is largely online (social media, affiliates, etc.), and the weight given it should be discounted accordingly.  "Convergent marketing channels increase the likelihood of confusion. [...]  However, this factor becomes less important when the marketing channel is less obscure.  Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion.  Therefore, the district court's determination that because both parties advertise on the Internet this factor weighed in favor of Systems was incorrect."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011)(citing *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004)("This factor is equivocal. PEI and the advertisers use identical marketing channels: the Internet. More specifically, each of their sites appears on defendants' search results pages. Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight").

5.      **Remaining Factors**

Under Armour's UNDER ARMOUR mark and "UA" logo are well-known in the athletic apparel industry.  But to the extent that Under Armour's claim is based on the secondary and less well-known ARMOUR mark, this factor should be given little weight.  Under Armour's products are similar, though not identical to Armorina's.  The final two factors-the quality of defendant's product and the level of sophistication of the consumer-are not applicable in this case.  There is no indication or allegation that Armorina sells anything other than good quality merchandise, or that it sells knock-off versions of Under Armor products.  Similarly, the sophistication of the relevant consumer is not unusual in this case, so warrants no consideration.

## IV.      ARGUMENT- MOTION FOR SUMMARY JUDGMENT ON CYBERSQUATTING COUNT

Under the ACPA, a person alleged to be a cybersquatter is liable to the owner of a protected mark if that person:

(i) has a bad faith intent to profit from that mark ...; and
(ii) registers, traffics in, or uses a domain name that—
(I) in the case of a mark that is distinctive ..., is identical or confusingly similar to that mark;
(II) in the case of a famous mark ..., is identical or confusingly similar to or dilutive of that mark;

*Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267–68 (4th Cir. 2001).

There is also a safe harbor provision under the ACPA that is available when the defendant both "believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." *Virtual Works, Inc.*, 238 F.3d at 270 (4th Cir. 2001).  For the same reasons and facts as those discussed fully above in the trademark infringement context, it is clear that Armorina acted in good faith when it registered armorina.com.  Furthermore, Armorina fully

believed the use of armorina.com was lawful, and the domain was not confusingly similar to any of Under Armour's marks.   Accordingly, summary judgment should be granted in favor of Armorina on Plaintiff's Count 6- Cybersquatting.


Date:  June 11, 2021          Respectfully submitted,

/s/ Joseph D. Allen
Joseph D. Allen (Bar #20736)
Christopher J. Lyon (Bar #27443)
Simms Showers LLP
201 International Circle
Suite 230
Baltimore, MD 21030
jdallen@simmsshowers.com
cjlyon@simmsshowers.com
Telephone: (410) 783-5795
Fax: (410) 510-1789

*Attorneys for Defendant,*
*Armorina Inc.*


## CERTIFICATE OF SERVICE

I certify that on June 11, 2021, I electronically filed the foregoing paper with a proposed Order with the Clerk of the Court using the ECF system, which system will send notification of such filings to all attorneys of record.

/s/ Joseph D. Allen